UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JAMES STANFIELD** | **CIVIL ACTION** |
| **VERSUS** | **NO. 06-2323** |
| **ISLAND OPERATING COMPANY, INC. et al.** | **SECTION "T"(2)** |

### ORDER AND REASONS

Before the Court is defendant Merit Energy Inc.'s Motion for Summary Judgment. [Rec. Doc. No. 22]. This motion came before the Court on oral argument on August 16, 2007. For the reasons that follow, the motion is GRANTED.

**I.     BACKGROUND**

Merit Energy Inc. ("Merit") is an oil and gas exploration and production company that owns an interest in several wells and platforms located in the Gulf of Mexico off the coast of Louisiana in Ship Shoal Block 198.[1] As a result of Hurricanes Katrina and Rita, the Ship Shoal 198J platform sustained serious damages and was shut in pending construction repairs. Prior to the hurricanes, Merit retained Island Operating, Inc. ("Island") to operate its 198J platform.[2] Following the hurricanes, Island continued to work for Merit as the platform operator and managed the construction and repair of the 198J platform. All parties agree that Merit had no employees or representatives on the platform on November 2, 2005.[3] In addition to its agreement with Island, Merit had a contract with Omega Natchiq Inc. ("Omega"), whereby Omega agreed to perform

---

[1] Rec. Doc. No. 22-2, p. 2, citing Rec. Doc. No. 22, Exhibit H.

[2] Id.

[3] Id. citing Exhibit A

construction repair work at Merit's platforms in and around Ship Shoal Block 198, including the 198J platform.[4]

The plaintiff was employed by Omega in November 2005 as a welder/fitter, and this case arises from an accident injuring the plaintiff while he was en route to the Ship Shoal 198J platform. When the plaintiff arrived at the platform, he was transferred onto the platform by means of a "personnel basket" suspended from a crane on the platform. According to the plaintiff, as the basket was being transferred from the deck of the vessel to the top deck of the platform, it struck a light pole affixed to the platform and rotated. Then, as it was being lowered down onto the top of the deck, it was about to strike a welding pole, and Mr. Stanfield stuck his foot outside of the ring of the basket and kicked the welding pole, in order to attempt to prevent the contact with the basket. At that time, the plaintiff allegedly felt a "pop" in his back. [5]

Plaintiff filed suit against Merit and Island, alleging that his injuries were caused by the negligence of their employees. This motion was filed by defendant Merit on June 18, 2007 moving the Court to grant summary judgment dismissing any and all claims by the plaintiff against it with prejudice on the theory that Merit bears no liability in the case.

## II.    LAW ON MOTION FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to

---

[4]*Id.*

[5]Id. at p. 2-3.

judgment as a matter of law. A fact is material if it "might affect the outcome of the suit under governing law[.]" <u>Anderson v. Liberty Lobby, Inc</u>., 477 U.S. 242, 248 (1986). No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio.</u>, 475 U.S. 574, 586 (1986). A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. <u>See</u> <u>id</u>. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. <u>Id</u>. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. <u>See</u> <u>Donaghey v. Ocean Drilling & Exploration Co.</u>, 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. <u>Id</u>. Hearsay evidence and unsworn documents do not qualify as competent opposing evidence. <u>Martin v. John W. Stone Oil Distrib., Inc.</u>, 819 F.2d 547, 549 (5th Cir. 1987). Finally, in evaluating the summary judgment motion, the court must read the facts in the light most favorable to the non-moving party. <u>Anderson</u>, 477 U.S. at 255.

### III. ANALYSIS

#### A. Vicarious Liability for Actions of an Independent Contractor

Merit filed this motion for summary judgment arguing that Merit had no employees on the

3

Ship Shoal 198J platform at any time pertinent to this litigation, and bears no liability for acts of negligence committed by any of its independent contractors. Merit notes that the crane operator at the time of the accident was an employee of Island, who was an independent contractor of Merit.

Under Louisiana law, a principal is not liable for the negligence committed by an independent contractor in the coarse of the contractor's performing its contractual duties.[6] Applying Louisiana law, the Fifth Circuit has consistently held that a principal is not liable for the actions of its independent contractor unless (1) the liability arises from ultrahazardous activities performed by the contractor on behalf of the principal or (2) the principal retained "operational control" over the contractor's work or expressly or impliedly approved its unsafe work practice that led to an injury.[7] There have been no allegations that Island was engaging in ultrahazardous activity. Therefore, the only way in which Merit could be held liable for the acts of negligence of its subcontractors, either Omega or Island, would be if it retained "operational control" over Omega or Island's work or approved of an unsafe work practice that led to an injury.

There have been no real allegations that Merit retained control over Omega or Island's work. As to Island, the Master Services Agreement specifically states that Island is an independent contractor, over which Merit has no power or authority to direct, supervise or control Island.[8] This fact is confirmed by Chris Brooks, Merit's operations manager, in his deposition testimony confirming that Merit had turned over the platform to Island as far as daily operations were

---

[6] Ainsworth v. Shell Offshore, Inc., 829 F.2d 548, 549 (5th Cir.1987).

[7] Klein v. Cisco-Eagle, Inc., 855 So.2d 844 (La. Ct. App. 2d. Cir. 2003)(citing Fruge ex rel. Fruge v. Parker Drilling Co., 337 F.3d 558 (5th Cir.2003); Coulter v. Texaco, Inc., 117 F.3d 909 (5th Cir.1997).

[8] See Rec. Doc. No. 22-2, p. 6; Rec. Doc. No. 22-7 Exhibit B.

concerned.[9]  The Court concludes that there is insufficient evidence to hold the principal, Merit, liable of actions of its independent contractor, as there has been no showing of any operational control by Merit or any approval of an unsafe work practice. As such, there is no basis for claims against Merit sounding vicarious liability.

**B.     Direct Liability**

In their oppositions to this motion, Omega and the plaintiff rely on theories of direct negligence on the part of Merit to support their contention that Merit bears at least some liability for the injuries of the plaintiff and thus should not be dismissed from the case.  Specifically, the parties address Merit's decision to use boat transfer rather than helicopter, the weather on the day of the accident and an alleged defect in the crane that was owned, though not operated, by Merit.

Omega argues that while Merit may not be responsible for Omega and Island's work, it was responsible for the decision to subject the Omega employees to daily personnel basket transfers even though "a safer method of transfer" was available.[10]  Omega claims that Merit's decision to ferry the crew to the platform, despite the availability of an alternative method, namely helicopter transfer, creates a sufficient issue of fact which would preclude summary judgment.  The Court disagrees. The fact that Merit chose that method of transfer, in and of itself, does not subject Merit to liability when such method is an acceptable practice in the industry.

Furthermore, there is no evidence that the weather conditions on the day of the plaintiff's injury were such that would create an indication that the transfers by ferry in accordance with

---

[9] See Rec. Doc. No. 22-9, Exhibit D, page 13, line 8 - page 14, line 14.

[10] Rec. Doc. No. 42, p. 2.

standard practice were unreasonable.  The parties agree that the accident occurred after the plaintiff had exited the ferry and while the plaintiff was being transferred by the crane.  Therefore, the height of the seas, while somewhat disputed, is effectively of no consequence.  The wind level on the day of the accident is also somewhat in dispute, but is also of no real consequence when it comes to determining Merit's liability.  Omega and the plaintiff contend that the wind might have been a cause of the accident, while Merit contends that the crane operator himself has stated in deposition that it was his own misjudgment of distance that led to the accident, and that he was comfortable making the transfer in the weather conditions at the time of the plaintiff's injury.  Irrespective of these arguments, it is unrefuted that the workers on the platform, none of whom were Merit employees, had the ability to exercise stop work authority if they felt that the conditions were unsafe.[11]  Remarkably, it seems that the only party that *could not* exercise stop work authority would actually be Merit, because it had no employees at the site and because its Master Contract with Island states that it "shall have no power or authority to direct, supervise or control ...[Island] with respect to the means, manner or method of performance of the work..."[12]

Turning to the allegation that the crane swing brake was inoperable or damaged at the time of the accident, the Court is similarly unpersuaded that Merit bears responsibility.  Greg Falgout, president of Island stated in deposition that it was Island's responsibility to do daily previews and

---

[11] The president of Island, Mr. Falgout's deposition states, "If the boat shows up with people on it and our crane operator...did not feel he could safely make the lift off the boat, he would not make the lift."  Rec. Doc. No. 59-2, p. 20, lines 9-13;  See also, Rec. Doc. No. 59-2, Exhibit C, p. 108, line 14-20 (Deposition of Mr. Cutrera indicating that he, as well as "everybody else out there" had stop-work authority).

[12] Rec Doc. No. 22-7, Exhibit B.

Case 2:06-cv-02323-GTP-JCW   Document 63   Filed 08/24/07   Page 7 of 8

inspections before operating the crane.[13]  Mr. Cutrera, the crane operator at the time of the incident testified that it was his responsibility to do the inspection the day before operating the crane.[14]  The Court assumes that Mr. Cutrera followed procedure and did the proper inspection before this incident, and found the crane to be operationally fit, but even if he did not do such inspection, his failure to do so would perhaps be negligent on his part and his employer's part, but not on Merit's part, as the principal to the independent contractor.

Furthermore, the production foreman for Island, Mike Kibodeaux testified in deposition that Island would call directly the independent contractor of Merit that was responsible for making repairs when any repairs were necessary.[15]  Therefore, Island was responsible for inspecting the crane before use, and Island was responsible for calling another subcontractor of Merit for repairs to the crane if it they were deemed necessary.  No such call appears to have been made.  Finally, evidence has been presented that the crane underwent its semi-annual inspection a few weeks after the incident and no defect in the swing break was found,[16] and no bills were presented to Merit for payment for any repairs to the swing break between the time of the accident and the time of the inspection.  Therefore, the Court finds no dispute of material fact as to Merit's absence of liability for the condition of the crane.

The Court is convinced that Merit has no place in this litigation, and should therefore be

---

[13] Rec. Doc. No. 59-2, Exhibit A., p. 22, lines 20-24.

[14] Rec. Doc. No.59-2, Exhibit C, p. 27-28.

[15] Rec. Doc. No. 59-2, Exhibit B, p. 40.

[16] Rec. Doc. No. 59-3, Exhibit I.

7

dismissed.

Accordingly,

**IT IS ORDERED** that defendant Merit Energy Inc.'s Motion for Summary Judgment be **GRANTED** and

**IT IS FURTHER ORDERED** that Merit Energy Inc. be **DISMISSED**.

New Orleans, Louisiana, this 24th day of August, 2007.

_____
**G. THOMAS PORTEOUS, JR.**
**UNITED STATES DISTRICT JUDGE**