UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JAMES STANFIELD** | **CIVIL ACTION** |
| **VERSUS** | **NO: 06-2323** |
| **ISLAND OPERATING CO.** | **SECTION: "T"(2)** |

**ORDER AND REASONS**

Before the Court are the following Motions: Merit Energy Company's Motion for Summary Judgment on Cross-Claim (Rec. Doc. 77); Omega Natchiq, Inc.'s Cross Motion for Summary Judgment on the Cross-Claim (Rec. Doc. 87); and Traveler's Insurance Company's Cross Motion for Summary Judgment. (Rec. Doc. 94). Oppositions were timely filed to all Motions. The Motions came for hearing without oral argument on November 14, 2007 and were submitted on the briefs. The Court having considered the record, the memoranda and arguments of the parties, the law and applicable jurisprudence is fully advised in the premises and ready to rule.

**I.   BACKGROUND**

Merit Energy Company, hereinafter, "Merit," is an oil and gas exploration company that owns an interest in several wells and platforms in the Gulf of Mexico in Ship Shoal block 198. During Hurricanes Katrina and Rita, the Ship Shoal 198(J) platform sustained damage and Merit contracted with Omega Natchiq, Inc., hereinafter, "Omega," whereby Omega agreed to perform construction repair work on, among others, the platform Ship Shoal 198(J).  Merit and Omega also entered into a Master Service Agreement under which Omega agreed to defend and indemnify Merit and its insurers for, *inter alia*, injury and/or death of any employees of Omega that arise out of, are related to, and/or incidental to, in any way, the work, service or equipment covered by the contract between Omega and Merit or any work order issued in connection therewith.  See Exhibit "C"

1

attached to Merit's Motion for Summary Judgment.

On November 2, 2005, James Stanfield was being transferred by personnel basket from the deck of a vessel to the platform when he was injured. It is undisputed that on the date of this accident, James Stanfield was employed by Omega. James Stanfield filed this suit against Merit and Island Operating Company (the operator of the platform) for damages and Omega intervened. Demand was made upon Omega for defense and indemnity by Merit early in the litigation. The demand was denied. Thereafter, Merit filed a cross-claim against Omega for defense and indemnity. In its response to the cross-claim, Omega filed a third-party claim against Merit's insurer Travelers Insurance Company, hereinafter, "Travelers", claiming that if Omega was bound to pay Merit, it had rights against Travelers in contribution.

On August 24, 2007, this Court issued an Order finding that Merit had no liability to James Stanfield and dismissed Merit from this matter. James Stanfield then settled all the claims against the remaining defendants. Accordingly, the only remaining issues before for the Court are Merit's cross-claim against Omega for defense costs and Omega's third-party demand against Travelers for contribution.

## II.   LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio.*, 475 U.S. 574, 586 (1986). A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,*

477 U.S. 242, 248 (1986). The non-moving party must do more than simply deny the allegations raised by the moving party. *Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. *Id.* In evaluating the summary judgment motion, the court must read the facts in the light most favorable to the non-moving party. *Anderson,* 477 U.S. at 255.

It is undisputed that Travelers paid Merit's defense costs to defend against the main demand by James Stanfield. It is also not seriously disputed that when Travelers paid the defense costs, it became subrogated to Merit's rights to recover those costs from Omega. Further, there is no dispute that the Master Service Agreement between Merit and Omega is a valid and enforceable agreement.

In *Meloy v. Conoco, Inc.*, 504 So. 2d 833, 839 (La. 1987), the Louisiana Supreme Court found that the Louisiana Oilfield Anti-Indemnity Act does not prohibit an indemnitee from recovering its costs of defense from its indemnitor if the indemnitee is found free from fault. Further, the Louisiana Supreme Court found that the allegations in the Plaintiff's suit against the indemnitee are irrelevant. Rather, it is the terms of the agreement which govern the obligations of the parties.

The Master Service Agreement at issue here provides that Omega is to defend Merit in an action such as this where the cause of action arises out of, is related to, or is incidental to the work covered by the Omega and Merit contract. There has been a finding by this Court that Merit is not liable to the Plaintiff and is free from fault. Accordingly, under *Meloy,* Merit, as the faultless indemnitee, can seek its defense costs from Omega. As Traveler's has paid Merit's defense costs, it has become subrogated to Merit's claim to recover the defense costs expended in this matter. Omega does not dispute that the agreement is valid, that Merit has been found free from fault, and

agrees that Travelers is the proper party to bring the claim for defense costs.

Omega urges that it and Travelers are solidary obligors as to Merit and therefore, both owed the obligation to pay Merit's defense costs. Accordingly, under Louisiana's solidary obligations articles, Omega claims it is only responsible for paying one-half of Merit's defense costs.

LSA-CC art. 1794 provides:

> An obligation is solidary for the obligors when each obligor is liable for the whole performance. A performance rendered by one of the solidary obligors relieves the others of liability toward the obligee

LSA-CC art. 1796 provides:

> Solidarity of an obligation shall not be presumed. A solidary obligation arises from a clear expression of the parties' intent or from the law.

LSA-CC art. 1797 provides:

> An obligation may be solidary though it derives from a different source for each obligor.

Omega's obligation to pay Merit's defense costs arises under the Master Service Agreement and Traveler's obligation to pay Merit's defense costs arises out of its insurance contract. Omega acknowledges that the source of it and Traveler's obligation may be different, but argues that since they are both obligated for the same performance, namely to pay Merits defense costs, it and Traveler's are solidary obligors.

The Court is not convinced that Travelers and Omega are solidary obligors under Louisiana law. While each may owe defense costs to Merit, i.e. the same performance, the obligation binding them is different. Omega is not Merit's insurer but is Merit's indemnitor. This distinction between

insurer and indemnitor was discussed in *Meloy* wherein the Louisiana Supreme Court stated:

> Generally, the insurer's obligation to defend suits against its insured is broader that its liability for damage claims. And the insurer's duty to defend suits brought against its insured is determined by the allegations in the injured plaintiff's petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage. (Citations omitted)

The Court went further in distinguishing insurer from indemnitor providing:

> An indemnity agreement is a specialized form of contract which is distinguishable from a liability policy. A cause of action under a liability insurance policy accures when liability attaches. However, an insurer's duty to defend arises whenever the pleadings against the insured disclose a possibility of liability under the policy. On the other hand, an indemnity agreement does not render the indemnitor liable until the indemnitee actually makes payment or sustains loss. Therefore, a cause of action for indemnification for costs of defense does not arise until the lawsuit is concluded and the defense costs are paid. The allegations in the complaint against the indemnitee are irrelevant to the indemnitor's obligation to pay. (Citations omitted).

*Meloy*, 504 So. 2d at 839.

As pointed out by the *Meloy* court, insurance and indemnity are separate and distinct. Travelers obligation and duty to its insured is broad. It is to pay for the defense of its insured on the main demand unless the petition unambiguously excludes coverage. On the other hand, Omega's obligation is much narrower. Omega is to pay the indemnitee's defense costs if and only if, a finding is made that the indemnitee is free from fault. At that point, the cause of action and hence its obligation for costs of defense arises while for the insurer, its obligation to defend arises much earlier in the litigation.

The cases cited by Omega do not assist its argument that an insurer and an indemnitor under an indemnity agreement are solidary obligors. *Hobbs v. Teledyne Mobile Offshore, Inc.*, 632 F.2d

1238, 1242 (5th Cir. 1980) involved two companies which were both liable to Chevron under separate indemnity agreements obligating the companies to indemnify Chevron for damages and claims.  The Court found that Chevron could have proceeded against either company under the respective indemnity agreements for the whole debt; therefore, the companies were solidarily bound. *Hobbs,* 632 So.2d at 1242.  *Hobbs* is inapplicable to this matter because Travelers and Omega are not both obligated under the same indemnity agreements and are not liable for the same obligation as laid out herein.  Similarly, *Gulf States Land and Dev., Inc. V. Ouachita Nat. Bank in Monroe*, 705 So. 2d 189 (La. App. 2nd Cir. 4/4/97) is factually distinguishable as it discussed solidary obligations between co-signors of a note and the corporation the co-signors created for purposes of a development project.  The Louisiana Second Circuit was called upon to decide whether the co-signors were solidary liable with each other or with the corporation to pay the bank the note.  Again, there was no discussion in that case about whether an liability insurer which must defend its insured and an indemnitor which must pay for defense costs if the indemnitee is found free of fault, are solidarly liable.

  This Court's finding of no solidarity by a first-party insurer and an indemnitor is supported by Louisiana jurisprudence holding that although a victim's insurer is bound by contract to pay the victim the same debt as the tort-feasor, the insurer and the tortfeasor are not bound *in solido* to the victim.  *Broadview Seafoods, Inc. v. Pierre,* 248 La. 533, 180 So.2d 694 (1965).  Payment to the victim by the insurer does not prevent the victim from recovering the same damage from the tortfeasor, unless, as here, there has been a subrogation by the insurer.  *Lagrue v. Murrhee,* 291 So.2d 844 (La.App. 4th Cir.1974), cert. denied 294 So.2d 829 (La.1974).  In other words, payment by the insurer does not exonerate the tortfeasor's debt to the victim: the victim can recover from his

own carrier for the damage and then collect the same damage from the tort-feasor.  Louisiana's courts have simply not been willing to give the tort-feasor the benefit of insurance protection provided by the victim out of his own pocket.

Further, Louisiana courts, as well as the United States Fifth Circuit of Appeals prohibit evidence of payment by the insurance carrier or by the victim's own medical insurance carrier under the "collateral source" rule.  *See Lagrue,* 291 So.2d at 848; *Davis v. Odeco, Inc.* 18 F. 3d 1237, 1243, 1244, (5th Cir. 1994); *Phillips v. Western Co. Of North America*, 953 F. 2d 923, 929,930 (5th Cir. 1992).  The jurisprudentially-created collateral source rule states that "a tortfeasor may not benefit, and an injured plaintiff's tort recovery may not be reduced, because of monies received by the plaintiff from sources independent of the tortfeasor's procuration or contribution." *Bozeman v. State*, 03-1016, p. 9 (La.7/2/04), 879 So.2d 692, 698.  The collateral source rule operates to ensure that the injured plaintiff's award from the tortfeasor is not reduced by payments received from independent sources.  *Id.*  The goal is to prohibit the tortfeasor from benefitting from the plaintiff's entitlement to other benefits, such as insurance coverage, under the circumstances.  *Bozeman,* 879 So.2d 692.

Finally, LSA-CC art 1796 provides that solidarity is not presumed and arises either by clear expression of the parties intent or from the law.  The comments to that article point out that solidarity can arise by operation of law as in the Louisiana Civil Code Articles dealing with solidary liability of joint tortfeasors conspiring to do harm to others.  See Comment (c) to LSA-CC art 1796. There has been no evidence presented to this Court of any liability arising between Merit and Omega that is considered joint and there has been no evidence of a clear expression by any of the parties that the obligation to pay Merit's defense costs would be a solidary obligation.  In fact, the Master Service Agreement is quiet as to this point.

This Court acknowledges that the opinion of *Sealift, Inc. v. Val-Tex Coatings, Inc.* 1987 WL 19946 (E.D. La. 1987)(Collins, R.), cited by Omega in its brief did find a liability insurer and various indemnitors solidarily liable to Chevron for its defense costs. However, the opinion is in the form of "minute entry" by the District Court; is not a reported decision; and has not been cited by any other court for that proposition of law despite that it is a 1987 decision. Accordingly, its precedential weight is doubtful. Further, the Court is not persuaded by the District Court's application of Louisiana law in that case and believes that the jurisprudence discussed in this order is more on point with the facts of this matter.

### III. CONCLUSION

For the foregoing reasons, it is held that the undisputed facts demonstrate that Travelers Insurance Company is subrogated to the rights of its insured Merit Energy Company to recover defense costs owed by Omega Natchiq, Inc. under the Master Service Agreement. The agreement being valid and enforceable under Louisiana law, provides that Omega shall pay Merit for all costs in defending this matter. As Merit's subrogee, Travelers is entitled to receiving the defense costs from Omega.

Accordingly,

**IT IS ORDERED** that the Merit's Motion for Summary Judgment (Rec. Doc. 77) is **DENIED**.

**IT IS FURTHER ORDERED** that Omega's Cross Motion for Summary Judgment (Rec. Doc. 87) is **DENIED.**

**IT IS FURTHER ORDERED** that Traveler's Motion for Summary Judgment (Rec. Doc. 94) is **GRANTED** and Omega is hereby ordered to pay to Travelers Insurance Company all costs,

including attorneys' fees, it expended in defending Merit Energy Company on the main demand in this matter.

    New Orleans, Louisiana, this 15th day of November, 2007.

                                                            _____
                                                              **G. THOMAS PORTEOUS, JR.**
                                                               **UNITED STATES DISTRICT JUDGE**